IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ARCANUM INVESTIGATIONS, INC. <br><br> v. <br><br> CRIME TIME PUBLISHING COMPANY, INC. | Case No. 1:14-cv-01523-TSE-IDD <br><br> District Judge: T. S. Ellis, III <br> Magistrate Judge: Ivan D. Davis |

**DEFENDANT CRIME TIME PUBLISHING COMPANY, INC.'S REPLY IN RESPONSE TO ARCANUM INVESTIGATIONS, INC'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE**

Defendant Crime Time Publishing Company, Inc. ("Crime Time"), through its undersigned counsel, hereby replies to the Opposition to Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Opposition") filed by the Plaintiff, Arcanum Investigations, Inc. ("Arcanum").

**ARGUMENT**

As stated in Crime Time's Motion to Dismiss ("Motion") and supporting Memorandum, because this Court cannot assert personal jurisdiction over Crime Time, Arcanum's Complaint should be dismissed. In its Opposition, Arcanum contends that personal jurisdiction exists over Crime Time because it contends that Crime Time maintains an interactive website. However, Crime Time does not maintain an interactive website consistent with applicable law. Even if Defendant's website is considered interactive, jurisdiction does not exist here. Accordingly, the Complaint should be dismissed.

**A. There is a sliding scale for evaluating internet activity.**

In the landmark case of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the court established a "sliding scale" for evaluating whether a defendant's

Internet activity could serve as a basis for asserting personal jurisdiction. As stated by the court, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of commercial activity that an entity conducts over the Internet." According to the court,

> This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper . . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction . . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted).

**B. Because Crime Time's website is passive, this Court cannot assert personal jurisdiction over Defendant.**

Crime Time is the owner of the website, BlackBookOnline.info ("BBO"), also commonly known as "Black Book Online." *See* Exhibit #1 to Crime Time's Memorandum in Support of Motion to Dismiss, Declaration of Robert Scott ("Scott Declaration") at ¶ 3. BBO is a free website that publishes descriptions and links to over 35,000 free, third-party public record lookups in the United States. *Id.* at ¶ 4. As such, it is one of the most widely recognized, respected and used websites for persons conducting public record research. *Id.* at ¶ 4. The information which it stores on BBO is information made available to the public accessible to users. *See* Scott Declaration, ¶ ¶ 4, 6.

A passive website is described as one that "simply places information on the Internet." *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). BBO

does even less than that. Although Plaintiff contends that BBO provides access to Virginia records, Arcanum is misconstruing the operation of the website. *See* Opposition, *passim*. As stated *supra*, BBO allows users to search for third-party government websites which contain the public information they seek. Once a user to BBO determines the information sought, they are directed to the government or third-party website to perform the search and access the information sought. As stated by the Court of Appeals for the Fourth Circuit, passive websites do not "subject [themselves] to jurisdiction in each State into which the electronic signal is transmitted and received," *Id.* As such, and was explained in further detail in its supporting Memorandum, at best, BBO is a "passive" website and, thus, this Court cannot assert jurisdiction over Crime Time.

    C.  **Even if BBO is considered an interactive website, Arcanum has failed to establish a *prima facie* showing of personal jurisdiction over Crime Time.**

Arcanum disagrees with Crime Time's characterization of its website and instead contends that BBO is not a passive website, but interactive and not even semi-interactive, but highly interactive. *See* Opposition, p. 6. Arcanum offers no support for its conclusion. Instead, Arcanum baldly asserts that the website is interactive because it "provid[es] its users a platform to access Virginia public records located throughout the Commonwealth" and incorrectly contends that Crime Time represents itself as interactive. *Id.* at p. 3, n.1; p. 6. Regrettably, these contentions are not supported by facts or law.

"Interactive websites" are those "where a user can exchange information with the host computer." *Zippo*, 952 F. Supp. at 1124. A highly interactive website is one in which the "defendant actively conducts business on the internet by selling products or entering contracts." *Income Tax Sch., Inc. v. Lopez*, 2012 U.S. Dist. LEXIS 110779, at * 34 (E.D. Va. Aug. 7, 2012). However, BBO does not conduct business: BBO does not offer any goods for sale; does not

3

charge a use or subscription fee; and does not require users to apply, register or request access to view or use its content. *See* Scott Declaration at ¶ 5. Accordingly, Arcanum has no basis for contending that BBO is a highly interactive website. Moreover, Crime Time does not represent itself as interactive. Instead, Crime Time plainly represents itself for what it is: a collection of links to third-party databases which are indexed for a website visitor's convenience. *See* Scott Declaration at ¶ 4.

Contrary to Plaintiff's contentions, the BBO website does not even qualify as a "semi-interactive" website. A semi-interactive website is one which "contains features which make it possible for a user to exchange information with the host computer." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003). With BBO, there is no exchange of information. Rather, the user submits its search criteria, the website links the user to the appropriate public record lookup, and the information is retrieved. There is no continuing dialogue between BBO's users and the databases; rather, inquiries are submitted and user is directed accordingly. *See* Scott Declaration, ¶ 4.

However, even assuming, *arguendo*, that BBO is a semi-interactive website, personal jurisdiction still does not exist. "[I]t is well-settled in the Fourth Circuit that accessibility alone cannot establish personal jurisdiction. *See, e.g., Young*, 315 F.3d at 261-262 (holding that Virginia's ability to access a website was insufficient to confer personal jurisdiction)." *Best Van Lines*, 2004 U.S. Dist. LEXIS 14733, at * 17. Instead, as this Court has stated, "the defendant must *direct* activity into the forum state, with the *intent* to engage in business *within the state*." *Graduate Mgmt. Admission Council v. RVR Narasimha Raju*, 241 F. Supp. 2d 589, 594 (E.D. Va. 2003) (emphasis in original).

4

There is a long line of cases that demonstrate that websites such as Defendant's do not create the necessary contacts for personal jurisdiction. Indeed, "[C]ourts have . . . recognized that, regardless of a website's passivity or interactivity, the essential question remains the same – did the defendant purposefully direct activity at the forum." *Vinten v. Jeantot Marine Alliances, S.A.*, 191 F. Supp. 2d 642, 646 (D.S.C. 2002). "[I]n personam jurisdiction must be based on more than a defendant's mere presence on the Internet even if it is an 'Interactive' presence. . . . Rather, the critical issue for the court to analyze is the nature and quality of commercial activity actually conducted by an entity over the Internet in the forum state." *Id.* (quoting *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 330-31 (D.S.C. 1999)); *see also Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 921 (D. Or. 1999)) ("the middle interactive category of Internet contacts as described in *Zippo* needs further refinement to include the fundamental requirement of personal jurisdiction: 'deliberate action' within the forum state."). *Best Van Lines, Inc. v. Walker*, 2004 U.S. Dist. LEXIS 7830, at * 11 (S.D.N.Y. May 5, 2004), *aff'd.*, 490 F.3d 239 (2d Cir. 2007) ("whether or not jurisdiction may be exercised depends upon the quantity and quality of a defendant's contacts with the forum state, in line with statutory authority and due process principles."); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1160-61 (W.D. Wisc. 2004) (a "website's level of interactivity may be one component of a determination whether a defendant has availed itself purposefully of the benefits or privileges of the forum state"); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 750 (E.D. Mich. 2000)("[T]he need for a special Internet-focused test for 'minimum contacts' has yet to be established. . . . the ultimate question can still as readily be answered by determining whether the defendant did, or did not, have sufficient 'minimum contacts' in the forum state."); *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C.

Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District.").

As explained in detail in Scott's Declaration, BBO is intended as a general reference resource, though the creative content found on the website is written and owned by Crime Time. *Id.* at ¶ 4. BBO is published on the Internet and is available to anyone who wishes to use the website. *Id.* at ¶ 6. BBO regularly receives Internet traffic from all over the world. *Id.* The content on BBO is presented in exactly the same fashion to any Internet visitor, regardless of that visitor's physical location. *Id.* at ¶ 7. For example, if a visitor from France accessed http://www.BlackBookOnline.info with their web browser, that visitor would be presented with the identical content as an Internet visitor from Virginia, California, Montana or Texas. *Id.* at ¶ 7. BBO is published to a web server and offers the identical content and user experience to anyone that may seek to access the website. *Id.* at ¶ 8. The website is not "more" or "less" available to any one Internet visitor compared to any other Internet visitor. *Id.* at ¶ 8. As such, Crime Time does not specifically direct or target any activity towards any particular forum, including the Commonwealth of Virginia.

Arcanum fails to provide any evidence to indicate that BBO targeted or directed activity towards Virginia. To the contrary, its evidence supports the opposite conclusion. Arcanum has presented this Court with an Exhibit indicating three searches of Virginia databases through BBO on one date. *See* Opposition, Exhibit 1. This Exhibit specifically supports Crime Time's assertion that Virginia is not targeted. Indeed, in approximately 170 searches listed, only three involved Virginia databases, constituting less than two percent of the total.

In *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002), the Fourth Circuit analyzed whether the Court could assert personal jurisdiction over two Connecticut newspapers which published material on a website about a contract to house Connecticut prisoners in Virginia. The newspapers were sued in Virginia for defamation. *Id.* The court considered whether the newspapers "manifested an intent to direct their web content . . . to a Virginia audience." *Id.* at 263. The court concluded that personal jurisdiction did not exist, stating that, for personal jurisdiction to exist, there needed to be evidence that the newspapers "directed [their] activity in a substantial way to the forum state." *Id.* (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)); *see also*, *ESAB Group, Inc. v. Centricut, LLC*, 126 F.3d 624, 625-26 (4th Cir. 1997) (no personal jurisdiction where business activities focused "generally on customers located throughout the United States and Canada without focusing on and targeting" the forum state); *Carefirst*, 334 F.3d at 398 (no personal jurisdiction where the defendant "did not . . . direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular.").

Here, as in *Burleson v. Toback*, 391 F. Supp. 2d 401, 414 (M.D. N.Ca. 2005), BBO targets and focuses on individuals "all over the world, no matter what their geographic location." As this Court has stated "there appears to be nothing more than the placement of the website on the Internet with knowledge of the possibility that the site might be accessed in Virginia. This alone does not satisfy the due process jurisdictional standard. . ." *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681, 685 (E.D. Va. 1999). "[C]reating a site, like placing a product into the stream of commerce, may be felt nationwide – or even worldwide – but, without more, it is not an act purposefully directed toward the forum state." *Id.* (quoting *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y. 1996), *aff'd.*, 126 F.3d 25, (2d Cir. 1997)).

7

Further, as in *Best Van Lines*, 2004 U.S. Dist. LEXIS 7830, at *16, there is no basis for asserting jurisdiction: BBO databases are not commercial in purpose, access to the website is free of charge and open to anyone in the country with internet access, the site's content is national in scope, there is no evidence that the site focused on Virginia in particular, advertised in Virginia, or sought out Virginia viewers. "It is well established that nationally available websites are often insufficient to sustain jurisdiction, even where they contain an interactive component." *Id.; see also GTE*, 199 F.3d at 1349-50 (access to "Internet Yellowpages" website on which District of Columbia residents could search database was insufficient to sustain a finding of jurisdiction); *In re Ski Train Fire in Kaprun, Austria*, 343 F. Supp. 2d 208, 216 (S.D.N.Y. 2004) (no jurisdiction found based on national website which allowed users to search databases).

As stated by the Court of Appeals for the District of Columbia Circuit, when analyzing a similar case involving the searching of national databases, "[w]e do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *GTE*, 199 F.3d at 1349 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). So, too here, Arcanum's expansive theory of personal jurisdiction would "shred these constitutional assurances out of practical existence." *Id.* at 1349. This should not be permitted. Accordingly, a *prima facie* case of personal jurisdiction cannot be established against Crime Time.

Similarly, the fact that Virginia advertisers *might* be displayed on Virginia database searches does not evidence that BBO in any way targets Virginia. Arcanum makes the bald and unsupported allegations that Crime Time directs its marketing activities to Virginia advertisers and advertises Virginia businesses to Virginia website users. *See* Opposition, p. 4. According to Arcanum, the "Crime Time website seeks Virginia advertisers to market to Virginia users" through advertisement with Google Adwords. *See* Opposition, p. 7. Additionally, Arcanum contends that "Crime Time directs advertising and marketing to Virginia users from which it derives revenue." *See* Opposition, p.8. Here again, Arcanum is simply wrong.

Crime Time has an advertising agreement with Google AdSense, a California corporation, that has discretion over what ads to display to Virginia users. Crime Time in turn receives a share of revenues from such ads from Google AdSense, not from any Virginia-based businesses. Arcanum seems to argue that running ads on a website constitutes a business transaction with any visitor that may view the advertisement. *Id.* This is simply not the law.

Although BBO allows users to advertise on its website, all advertising is run through Google,[1] as specifically indicated on the BBO website. Google is a California corporation which operates its websites from its California headquarters. *See Cmty. Surgical Supply of Toms River v. Medline DiaMed,* LLC, 2011 U.S. Dist. LEXIS 82695, at * 10 (D.N.J. July 27, 2011) (unpublished decision). "Google AdWords program allows advertisers to select certain "keywords" that will trigger the "Sponsored Links"; the advertisers pay Google each time a web user clicks on its keyword-targeted "Sponsored Link" on a search results page." *Parts Geek, LLC v. Auto Parts Network, Inc.*, 2010 U.S. Dist. LEXIS 32385, at * 4 (D.N.J. April 1, 2010). Similarly, Google AdSense is a program that "'inserts ads from Google's ad server on users'

---

[1] Although on its website, BBO currently states that it utilizes Google AdWords, BBO actually utilizes Google AdSense. The same analysis applies to either service.

9

websites,' and involves the placement of a 'piece of code' on his Web site to designate where the ads were to appear." *Gary Null & Assoc., Inc. v. Phillips*, 906 N.Y.S. 2d 449, 453 (NY. Sup. Ct. 2010). The user does not have control over ad placement. *Id.*

The "fact that a particular website displays an advertisement that is viewable in [the forum state] or shows a company that does business in [the forum state] does not, by itself, mean that the website owner had any contact with [the forum state]." *Sterling Currency Group LLC v. Maurer*, 2013 U.S. Dist. LEXIS 109382, at * 22 (N.D. Ga. Aug. 5, 2013) (quoting *Hernandez v. El Pais QiHubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2009)).

Even companies who use Google AdWords and AdSense do not subject themselves to personal jurisdiction in a forum absent evidence that they "sought out or intended any interaction" with the forum state. *See Capital Confirmation, Inc. v. Auditconfirmations, LLC*, 2009 U.S. Dist. LEXIS 101850, at * (M.D. Tenn. Nov. 2, 2009); *Gary Null*, 906 N.Y.S. 2d at 454 (the fact that the Web site contains advertisement from Google does not alter [the conclusion that New York is not targeted], as Phillips has no control over the random selection of advertisements appearing on his Web site, and those advertisements are not strictly limited to companies located in New York."). Indeed, courts have stated that "to extend jurisdiction in [the forum state] to any company that contracts with Google, an international corporation, would thwart the due process protections which underlie the personal jurisdiction analysis." *Sterling*, 2013 U.S. Dist. LEXIS 109382, at * 22 (quoting *Celorio v. Google, Inc.*, 872 F. Supp. 2d 1327, 1333-34 (N.D. Fla. 2012), report and recommendation adopted, *No. 1:11CV79-SPM/GRJ*, 2012 U.S. Dist. LEXIS 69142 (N.D. Fla. May 17, 2012)). As these cases demonstrate, personal jurisdiction cannot be asserted on a party like Crime Time, which made absolutely no efforts to "target" the Commonwealth of Virginia.

### D. Venue is Improper.

Crime Time is not subject to personal jurisdiction in Virginia because of its website and a cease and desist letter alone cannot establish personal jurisdiction, venue in Virginia does not exist. *See e.g. Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006). Defendant made the same argument in its Motion to Dismiss and Plaintiff has not made any demonstration to the contrary, outside of the personal jurisdiction arguments, discussed in more detail, above.

### E. Jurisdictional Discovery is Improper

Arcanum contends that if the Court disagrees that it has made a prima facie showing of jurisdiction, it should be entitled to jurisdictional discovery. *See* Opposition, p. 3, n.1. To the contrary, because Arcanum has failed to present a *prima facie* case for jurisdiction, it is not entitled to jurisdictional discovery. *See Stokes v. JPMorgan Chase Bank, NA*, 2012 U.S. Dist. LEXIS 19575, at * 16 (D. Md. Feb. 16, 2012). Arcanum has not made any allegations of any additional contacts, but merely requests discovery to see what it can find. *See Carefirst*, 334 F.3d at 401 (quoting *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (court did not abuse its discretion in denying jurisdictional discovery when plaintiff "offered nothing beyond his bare allegations"). There is no evidence that Arcanum wants more than the right to conduct a prohibited fishing expedition. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216 n.3 (4th Cir. 2002); *Baker v. Patterson Med. Supply, Inc.*, 2012 U.S. Dist. LEXIS 14733, at * 17 (E.D. Va. Feb. 3, 2012). As such, Arcanum's request for jurisdictional discovery should be denied by this court.

### CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint against Crime Time Publishing Company, Inc. for lack of any jurisdictional contacts with Virginia.

Respectfully submitted,

By:_____/s/_____  By: _____/s/_____
Lynndolyn T. Mitchell                Eric J. Menhart*
VSB #35241                           * Admitted *Pro Hac Vice*
Law Offices of Lynndolyn T. Mitchell, P.C.  Lexero Law
401 E. Jefferson Street Suite 201    420 C St NE
Rockville, MD 20850                  Washington, DC 20002
Phone: (301) 340-2541                Phone: 855-453-9376
Fax: (204) 238-7061                  Fax: 855-453-9376
Lynndolyn@lynnmitchell4law.com       Eric.Menhart@Lexero.com

## CERTIFICATE OF SERVICE

     I hereby certify that on the date of this filing, the foregoing was served via the Court's CM/ECF system and service will thereby be accomplished on:

    Thomas M. Dunlap, Esquire
    Ellis L. Bennett, Esquire
    DunlapWeaver PLLC
    211 Church Street, SE
    Leesburg, VA 20175
    tdunlap@dunlapweaver.com
    ebennett@dunlapweaver.com
    Attorneys for Plaintiff

                                          By:_____/s/_____
                                          Lynndolyn T. Mitchell
                                          VSB #35241